Case No. 24-5222, Insight Terminal Solutions et al. v. Cecelia Financial Mgmt. et al. Oral argument not to exceed 15 minutes per side. Jessica Ellsworth for the appellant. You may proceed. Good morning, Your Honors, and may it please the Court, Jessica Ellsworth for the appellant. This appeal asks whether a family business that injected money into a second family business really did so as a bona fide loan, or it's more appropriately characterized as an equity infusion. The answer matters because when the second family business declared bankruptcy, the first asked to be treated as a creditor. Mr. Siegel, at his deposition, acknowledged making up terms for the purported loan, being on both sides of the transaction between what he called nepotistic companies, and it turned out that no other lenders would give money on the terms that he did. The bankruptcy court decided that this money was a loan in a 50-page opinion that it adopted verbatim from the Bay Bridge Party. The opinion has no indication that it's the product of independent judicial analysis, and that's particularly troubling in a case where there were very hotly disputed legal and evidentiary issues to be resolved. The first issue is the admissibility of Mr. Siegel's testimony. He was ill. Just a broader, I'm having trouble understanding why this, I understand that an unsecured creditor is better than an equity holder. I understand that. But the client, I don't know if it was the predecessor or the takeover of Insight, that company had a security interest. So still superior to the, even if it is an unsecured debt. So why wouldn't this unsecured debt have been wiped out with the reorganization? I just don't understand why they still don't have, why they're still entitled to anything as an unsecured creditor, because there would have been nothing left. I mean, they still go last. So, Your Honor, my understanding is that part of the confirmed bankruptcy plan was that valid claims would be paid. And so whether this is in fact a valid claim is a significant issue. Why didn't, why not litigating, why not litigate this before confirmation? And then you would have determined if it was valid. And then that could have gone into whether to confirm versus whether to continue fighting. And then they would have still been an unsecured creditor and they still would have been not in good shape, I wouldn't think. Your Honor, again, my understanding is that this adversary proceeding had to post-date Autumn Wind actually taking over Insight Terminal Solutions in order to be able to say that this was not a valid claim. So you had to, Autumn Wind had to take over and they took over as part of the reorganization plan. That's right. And then you got to litigate. That's right. And Your Honor has honed in on, I think, one of the key facts that the bankruptcy court missed here, which is that Autumn Wind was a secured creditor. And one of the very basic factual mistakes that the bankruptcy court made by adopting this wholesale opinion from Baybridge was to suggest that, was actually to state that Autumn Wind's loan was unsecured, which is flatly inconsistent with what the confirmed bankruptcy plan, among other things, says. Mr. Siegel, when he was deposed in this case, and he was deposed as a 30B6 witness for Cecilia, the claimant whose claim is at stake in the adversary proceeding. He was ill when he was deposed. He passed away before the deposition was completed. But during that deposition, he admitted to pulling key terms out of thin air, to having no real maturity date, to choosing terms at random. And he called the notion of doing due diligence ridiculous. So when the court was required to determine whether this was, in fact, the product, looks like the product of an arm's length transaction or was in fact an equity infusion into what Mr. Siegel called his family's nest egg. This deposition testimony was extremely important. It was admissible for two separate reasons, both of which the bankruptcy court got wrong. Before we get to the reasons, I found it was in your appellate brief to the BAP. I thought there was basically, we talked about waiver and forfeiture before. It was almost a waiver where the brief said that, I know you weren't counsel, but your client only sought to introduce this testimony as against Cecilia and not as against Baybridge. That struck me. I mean, and then the bankruptcy court, the BAP's opinion, basically kind of relies on that representation. So why wouldn't we find that a forfeiture? Because obviously now you're arguing it was admissible against Baybridge. So, you know, I think you need to read that whole paragraph of the BAP brief to really understand that the basis for the argument at the end of the day is the same, which is that this was Cecilia's claim that was being litigated. And this was admissible in determining whether Cecilia's claim was valid. And I think the last sentence of that paragraph says it doesn't matter who owns the claim. This is about the validity of Cecilia's claim. And that is exactly the argument that we are making today, that under 801D2 of the federal rules of evidence, that this deposition was admissible. It was admissible under the Sixth Circuit's rule in Schaeffer, which preexisted the more recent rule amendment. And the amendment confirms that Schaeffer was on the right side of the correct side of a circuit split. If we agree with you that a bankruptcy judge here got the law wrong as to party opponent rules, as to kind of our rule 32 depositions when somebody has passed away and things like that. What do we make of the bankruptcy court's kind of alternative comments about, well, even if it were admissible, I'd give it little weight. So two things, Your Honor. One, I think if you're ruling under 801D2, I don't think that the question about weight comes in at all because it would be not hearsay. So there wouldn't be this kind of weighing of the testimony that would come in separately. That comes in under the rule 32 analysis. And there the bankruptcy court had it exactly wrong when the bankruptcy court said that courts uniformly exclude deposition testimony in these circumstances. The four cases that are cited there don't say that. Right. Miller doesn't say that. There's really no court that has said that except one relying on the Sixth Amendment, which doesn't apply in civil cases anyway. What then does happen, and all the courts agree, is that there has to be a weighing of prejudice from admitting it versus excluding it. And the bankruptcy court didn't do that. The only thing the bankruptcy. So I recognize the opinion as a statement, and I agree with you that it could be read as a requirement rather than discretion. But when the parties were debating it at the hearing, the district court did seem to say that in an exercise, or the bankruptcy judge, not the district, the bankruptcy judge did seem to say as a matter of kind of the judge's own instinct that this was inherently prejudicial and she didn't want to give it much weight. So it strikes me that she was exercising some amount of discretion there. I think the discretion, though, has to be exercised in a way that's an appropriate exercise of discretion. And if the only basis for exercising that discretion is to say there wasn't cross-examination, then it is essentially authorizing courts to just second guess the rule, which has said that the existence of cross-examination alone is not a basis to exclude. In a situation where a party comes in and can actually identify prejudice from the lack of cross-examination, you would weigh that against the prejudice here of excluding this testimony from the one person who had been involved in these loan transaction documents who made very shocking and candid admissions about the terms on which this money was moved from Cecilia into Insight Terminal Solutions. So the prejudice, and I think the bankruptcy court failed to address or acknowledge the prejudice from excluding this to Insight. And that is the very fact of what the prejudice inquiry gets at. You have to do a weighing, and that's what the bankruptcy court failed to do in this case. I think whether you get at it through 801D2 or you get at it through Rule 32, in either circumstance, this deposition should have come in. And as the first sentence... Can I ask you, switching to Calhoun versus Schaeffer? So I think I know the facts. So Schaeffer is the one about the estate. Why wouldn't we say that you could interpret Schaeffer narrowly to essentially say the decedent is itself a party or himself or herself a party when the estate is a party, which is different than a predecessor, because Calhoun has language that seems to suggest categorically that no predecessors and interests can rely on the rule. Your Honor, I think the Rules Committee notes that the reports that the Rules Committee issued in 2021 and in 2023 reconcile Schaeffer and Calhoun in a way that might be helpful for this court to look at. And what they look to is the fact that in Calhoun, the bankruptcy trustee was bringing a fraudulent conveyance claim. And so the bankruptcy trustee had not, in fact, stepped into the shoes of the debtor. In fact, the bankruptcy trustee's position in a fraudulent conveyance action is it's a code-based action that the trustee is empowered to bring that goes beyond what rights it inherited from the debtor. In Schaeffer, what the court was focused on is that the right was transferred intact. And Schaeffer gets a little bit confusing, Your Honor, because there are actually two levels of hearsay. And so you have to look in Schaeffer at whether the son who is pursuing this on behalf of the state is a party, and then also whether statements of the father that are included in a letter. So it's sort of a double hearsay problem. But it all comes in under 801D2. And Schaeffer is really what the Rules Committee looked at as foundational precedent on what the correct application of 801D2 is. It said Schaeffer had the rights that when it was resolving this split among the courts, it repeatedly references Schaeffer as the one that comes out correctly on how to interpret what the intended meaning of that rule is. Well, if we could switch to the merits, I'm quite intrigued by this test. I mean, there's a circuit split on this now. And we picked our side of the split with a footnote, as far as I can tell, where we just said, well, it seems like we should follow these tax factors. It doesn't strike me as intuitive to think that the federal courts have the power to rewrite contracts in this way. And why wouldn't we say it should be a state law issue? So, Your Honor, I think there are two answers to that question. And one brings up the discussion that you've had in other cases today about waiver and forfeiture. Baybridge did not ask the bankruptcy court to resolve that question. It drafted an opinion that includes a footnote, footnote 12, which the bankruptcy opinion adopted, where the bankruptcy court said we are not going to address whether auto style remains good law. And so I think that alone is a reason not to address it. The other, I think, important factor to point out is that the courts that have come at this differently through state law have reached the same conclusion. We cite the In re Lothian case from Texas. Does it matter for your facts? I don't think it affects the facts at all. The courts that have done it through state law have looked to the same set of factors. That's because the state law in those cases. Does Kentucky law have these factors incorporated? So Kentucky law is perhaps less developed than some other state law on tax law. But there is no state law anywhere we're aware of that has allowed this kind of sham transaction to pass by taking a real form over substance approach. It's just the opposite. And in the tax context, it's almost always substance. You wouldn't concede that if it was state law that you'd lose. That's right. We think under state law it would reach the same outcome. It's just not teed up because Baybridge asked the bankruptcy court not to address it. I had one question. I don't want to take up your time. Do you? I have one question. I thought the most compelling fact under the 12 factors was the proportionality of the loan. The way I read auto styles was that when, say, two equity holders, each of which owns 50%, give 50% of the loan. They're essentially lending themselves the same money. But here that's not like that at all. If we accept the idea that the rights and the agreements really meant that the lender was only 35% equity holder. If that's true, this loan as an equity would have made no sense because they were essentially giving a whole bunch of money to Autumn for no reason. That's just irrational. Your Honor, I think the timing becomes important because these loans started before Autumn Wind had any – these purported loans started before Autumn Wind had any involvement in the case. And as Mr. Siegel said at his deposition, they were really designed to protect the family's nest egg, which is how it viewed the Oakland sublease that it was trying to work out for the bulk terminal there. Thank you, Your Honors. Good morning. Roger Jones on behalf of Baybridge. I'd like to first address the argument regarding the applicable law here. First, we did not waive that issue. We raised it at every step of the way, and the record will reflect. We briefed it extensively in connection with the motion for summary judgment that preceded the hearing. We briefed it extensively in our pretrial brief. However, the court did not decide that question. We know that we presented proposed findings of facts and conclusions of law, but we had no reason to believe that the court was going to decide that case and overrule auto style. So we raised it every step of the way. But if we decided it would seem quite unfair to your friends on the other side for us to decide it and not give them a chance to argue under state law. So if we actually decided that it should be a state law test, why wouldn't the appropriate remedy be for us to remand and let's litigate the state law test? Because state law test was litigated. In the trial court, there was a challenge to the enforceability of the promissory notes. Were they enforceable under Kentucky law? Did they give rights to a valid right of payment under Kentucky law? Did they give a rise to a claim under Kentucky law? Were they enforceable under Kentucky law? All of that was litigated. They could have made any argument they wished regarding whether that was a right of payment under Kentucky law or whether those notes were enforceable under Kentucky law. And they did. And if you'll read the court's opinion, the court decided under Kentucky law, those notes were enforceable. Go ahead. You know, you say if you read the court's opinion, it's a little weird here because we have 48 pages just completely copied. Do we have any other examples where we have said that a lower court can do that? Yes. Both the Kilburn case and… Kilburn, they changed stuff. They changed stuff. What did you change here in the 48 pages? Nothing, Your Honor. Nothing. Okay. So Kilburn doesn't help you. Actually, Kilburn and subsequent cases speak to even if copied verbatim, there's still the findings of fact and conclusions of law of the court, and they're entitled to be reviewed under the standards of review that this court would normally apply. Well, what evidence do you point to that there actually was independent judicial analysis? Well, the court was familiar with all the issues, as you can see in the court's transcript. The comment made earlier about how it would be inherently prejudicial to admit Mr. Siegel's deposition when we had no opportunity to cross-examine. The court… So you're saying that the fact that parts of the analysis were consistent with maybe some things that the court said on the record, that's evidence of independent judicial analysis when they received the proposed order that they ultimately… That's correct, Your Honor. Also, the court treated Autumn Wind as a secured creditor this entire time, and then all of a sudden we have a finding that goes the other way on paragraphs 28 and 67. I mean, it seems like how is that not an abuse of discretion to just copy 48 pages? Your Honor… Again, I don't think you have an example that gets even close, and that makes factual findings that are a complete flip and haven't been argued. I mean, to me, that's pretty extraordinary evidence of an abuse of discretion. Your Honor, there's no complete flip, and the issue of the court did not treat the Autumn Wind claim as secured. If the court will go back and look at the plan and disclosure statements were filed, and the other side cites to the disclosure statement, not to the plan, neither treat Autumn Wind as a secured creditor, and Autumn Wind was not a secured creditor in this bankruptcy case. And your reason why is incredibly complicated. Essentially, they committed negligence because the contract clearly wanted them to be a secured creditor, right? Yeah, but they missed. Gosh, you want me to get into whether they're a secured creditor? It's so complicated. They were able to take over Insight. Clearly, they had some security. No, they weren't able to take over Insight because they had security. That's not the case. They filed a competing plan as a creditor, but not as a secured creditor. They filed a competing plan. That's how they took over ITS. It had nothing to do with their security interest. They just filed a competing plan that provided for the payment of all claims in full. That's all they did. It had nothing to do with security. Did they take a gamble? So I'm curious why this wasn't worked out because it really wouldn't have mattered. This goes to my future point. It wouldn't have mattered if this had been litigated pre-reorganization, right? Because you would have been an unsecured creditor, and unsecured creditors get paid last anyways. I guess not as last as equity. I'll grant you that. Did it have any funds? How would you have gotten paid if it was just through a bankruptcy? Unsecured creditors get paid last. They get paid what's left, right? Well, that depends. It depends on what the value of the estate is. There may be sufficient value in the estate to pay unsecured creditors in full.  Autumn Wind would have gotten first, assuming they're a secured creditor. Yeah, but they weren't. But they would have gotten first if they were a secured creditor. They would have gotten their entire loan back. They would have. Possibly. When we say their entire loan, there are lots of them. So I'm curious, why wouldn't they have tried to litigate? That's why I think there might be some strategy for them to hope for the best. Instead of litigating this now, present their claim and then after the facts, take this chance that this is going to be turned into equity and you're going to have nothing? Your Honor, I can't speak to the motivations of Autumn Wind with respect to the plan that they filed. But what they did do is they filed a plan which provided for the payment of all claims in full. Based on the theory that there was sufficient value in the sublease that would justify paying all creditors in full. That's why the issue was not secured or unsecured. They paid everyone in full. Did both of you know at the time that there was this $5 million payment? Because there were some allegations of fraud on your part that you tried to hide this loan. Your Honor, I had nothing to – Not the lawyer. There was a fraud claim against Siegel that he had tried to – and it wasn't litigated. It was dismissed. The alleged fraud claim related to whether Mr. Siegel had misrepresented Autumn Wind, whether or not ITS had any debts other than those that were disclosed in their loan agreement. Did the loan agreement disclose this loan? It did not. Did he commit fraud? Your Honor, that's a separate lawsuit that I'm not involved in. To take the district court's findings about this, and usually we would review quite deferentially, like we wouldn't have to sort through all of this except for the problem here seems to be that we don't have really any evidence of independent judgment by the bankruptcy court. I scoured looking for examples, and over and over and over again we have said we frown on practices that quite frankly like pale in comparison to this. Kilburn, Bouldridge, you can go certainly outside of our circuit. And time and time again we say we frown on this practice. You can't do this. And in situations where the lower court has at least maybe adopted some findings in fact from here and some from here or made some alterations or things like that, we let it go. Or many circuits apply a heightened scrutiny. We have never blessed anything like this. I mean, we're in a law school, right? I mean, you really need to tell me that, you know, as these young people go out into the world, they can expect that, you know, the independent judge is just, I mean, not even here, like really altering anything, deleting the word proposed. And that's a decision in a case as, I mean, we're not talking about a default. We're not talking about a minor order. We're talking about 48 pages in a complex adversary proceeding. Now you're asking us to defer to when there are clearly factual issues, there are clearly legal errors rife throughout. Your Honor, I'll disagree with clearly factual errors. And I'll disagree with clearly legal errors. We'll start with. So just stick with copy verbatim. Your Honor, both sides were asked to submit post findings of fact and conclusions of law. They did. We did. The court adopted ours rather than theirs. That was the exercise of judgment on the part of the court. The court could have adopted post findings of fact and conclusions of law submitted by the other side. Were you surprised that it was adopted verbatim, 48 pages? Has that ever happened to you before in any of your cases, 48 pages? Yes, but it's unique, Your Honor, because it's in the bankruptcy context, and I'm not going to try to apply a lot of the things we do in a bankruptcy context to a district court. So it's practice in this district in Kentucky to adopt 48-page opinions verbatim. That happens regularly? No, it wasn't the question you asked me. The question you asked was about have I ever had this happen before, and it is often the case in bankruptcy that we draft very complicated proposed findings of fact and conclusions of law or very complicated orders that are actually entered verbatim. For example, in the cash collateral context, and if I'm speaking too much bankruptcy law, let me know, but often those orders are entered. They're 40 pages, and they're entered verbatim. Orders approving plans, aren't those often submitted? They are often submitted in this case. In this case, the court signed the order that Autumn Wynn submitted confirming its plan in its entirety. So it is very common in this context to submit an order to the court and have the court sign that order in its entirety without changes. It is a common practice in the bankruptcy court. It occurred in this case. And adversary matters that are highly contested. I mean, this isn't a situation where, like, you know, the U.S. trustee finds fraud, you know, later on and goes in to kind of, you know, undo the plan, right? And the debtor doesn't even show up. We see that all the time in the Southern District Bankruptcy Court or things like that. Sure, this person is in default. The bankruptcy court is going to take a proposed order from the U.S. trustee. There are certainly things. I also certainly know that, you know, you get a proposed order and the judge can go through and check off and make sure things are right. We have, like, evidence of that places. In all of every single case that we have blessed this type of action, there is some piece of evidence, even as minuscule, of showing that there was independent judgment. And to start going down this road where we're blessing this really, you know, it takes us where we have never gone before. Your Honor, again, the exercise of independent judgment was accepting our proposed findings and fact and conclusions in law rather than those that were submitted by the other party. And I do believe if we look back at the decisions both of the Supreme Court and this court, the court has said even if they're copied verbatim, they're still entitled to be subject to review under the clearly erroneous standard or under abuse of discretion standard, whatever the applicable standard of review is. Your Honor, before I run out of time, I want to address one issue. Can I ask the one point that I had for you on the evidence point? You drafted the opinion, so I'll ask you directly. So Rule 32, clearly under Wright and Miller, all the case law says it's discretionary whether to allow for the admission of a deposition without cross-examination. And the order is written as if it's a requirement that you have. It's almost like a confrontation clause. It's a rule that you have, but that's not the way the case law exists. So why wouldn't we say that's a legal error and just remand it to allow the court to exercise? Your Honor, if you look at the opinion, you ask me if I wrote it, paragraph 38 on page 13, the court expressly recognized that she had the discretion to admit the deposition and then afford it whatever way she deemed appropriate. Well, how do you deal with the sentence, courts have uniformly held that Rule 32A1 requires that the party opposing admission of the statement have had a reasonable opportunity to cross-examine the deponent. Is that an accurate statement of law? Your Honor, it may be, as the BAP said, an exaggeration of the statement of law, but the first case cited after that sentence is one where it talks about the court's discretion. It's the parenthetical. It's the next sentence. And then in paragraph 38, courts have long recognized that in a bench trial, it is an acceptable alternative to admit evidence of both borderline admissibility and give it the forensic weight to which it is entitled. So the court recognized its discretion. It simply didn't exercise that discretion to admit the deposition, but it's expressly in paragraph 38, page 13. I know I'm running out of time, but I want to try to address one point quickly. Your Honor, below, the court decided that as a matter of Kentucky law, the notes evidenced a valid and enforceable right to payment. Under the Supreme Court's case in Travelers, that is the end of the inquiry. The Supreme Court in Travelers made clear we do not look to federal common law to determine whether a claim exists or is enforceable or allowable in a bankruptcy case. We look to state law, and that is clear in Travelers. It's also clear in this court's unpublished opinion in N. Ray Oakland Physicians where the court expressly said that a right to payment, what is a right to payment, what is a claim, is determined by reference to state law. And so that's it. Thank you, Your Honor. Thank you. Thank you, Your Honors. A few short points on rebuttal, the first of which to pick up on your question, Judge Bloom-Katz. In McTagg, in Kilgram, in other cases from this court, what this court has looked for in a decision below is that the court can say there's nothing that indicates a failure to have considered both sides' submissions. There's something that ensures the court read the document before signing it. We have a problem here. There are a number of facts that were included in our findings of fact and conclusions of law that the bankruptcy court simply never addressed. Have we ever reversed a court on this ground? I don't think this court has reversed, but the Third Circuit has, and I'd point the court to the Bright case and the Community Bank case, both of which I think take the same approach that this court took in Kilborne and McTagg, but they were presented with a situation unlike in Kilborne and McTagg where there really was a complete verbatim inclusion of something with no other indicator of the court's assessment of the two sides' positions. The next thing I would mention is that there was a discussion about whether this was a secured loan agreement. On pages 14 and 15 of our reply brief, we cite from the disclosure statement and the bankruptcy plan, both of which showed that Autumn Wynn was a secured creditor. The third point I'd make is that on the findings of fact and conclusions of law and the auto style factors, one of the reasons this is barely addressed in the briefing in your Honor's questions, Judge Murthy, I think are very good ones, but it's barely addressed here because at the end of this trial, the other side didn't ask the bankruptcy court to grapple with this question about whether and the extent to which auto style remains good law or Kentucky law should be applied in some other way. So you disagree with your friend on the other side who suggested it's already been found as a matter of state law that this is a loan and nothing? I very much disagree with that. Is that because the court wasn't asked to do the recharacterization thing? It was just asked to? So Your Honor, I think there are two pieces of it. One is the recharacterization thing. Yes, that's part of it. And the other piece is that there's actually a separate issue that part of the claim here, there is a disallowance challenge to, and that's because Mr. Siegel, at his deposition, acknowledged that significant portion, about $900,000, had already been paid back. And so if Mr. Siegel's testimony comes in, then even under Kentucky state law, that $900,000 disallowance is something that the bankruptcy court would need to address on remand, separate and apart from auto style. And the last point I'd make is that paragraph 38, which my friend on the other side pointed you to, that is where the district court referred to giving little weight, talks about evidence of, quote, borderline admissibility. Mr. Siegel's deposition is not evidence of borderline admissibility. It is evidence that was admissible under 801D2 and also under Rule 32. So for all of these reasons, we would ask this court to reverse the decision below. Thank you. Thank you, counsel. Thank you both. The case is submitted. And the clerk can call the last case.